**Roxana Rojas Castro De VARGAS, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 01–70668.**

United States Court of Appeals, Ninth Circuit.

Submitted March 6, 2002.[1]

Decided June 18, 2003.

Before: BROWNING, THOMAS, and RAWLINSON, Circuit Judges.

**MEMORANDUM**[2]

Roxana Rojas–Castro de Vargas ("Ro-

1. The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

2. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

jas–Castro") seeks review of a final order of the Board of Immigration Appeals ("BIA") affirming an order of exclusion entered by the immigration judge ("IJ").[3] Rojas–Castro argues the IJ and BIA abused their discretion in denying her motion to withdraw her application for admission and denying her motion to continue the proceedings. She also argues she was denied a fundamentally fair hearing because the IJ denied her the opportunity to testify. We grant the petition for review and remand.

At the time of the proceedings before the IJ, neither statute not regulation directly provided for the withdrawal of an application for admission. *Matter of Gutierrez*, 19 I. & N. Dec. 562, 564, 1988 WL 235445.[4] However, an immigration judge was permitted to allow the withdrawal if the alien showed that 'justice may best be served' by permitting withdrawal. *Id.* As held by the BIA, "[a]n immigration judge should not allow withdrawal unless an alien, in addition to demonstrating that he possesses both the intent and the means to depart immediately from the United States, establishes that factors directly relating to the issue of his admissibility indicate that granting withdrawal would be in the interest of justice (i.e., that justice would be ill served if an order of exclusion was entered)." *Id.* at 564–65. If withdrawal is requested after excludability be-

comes apparent, permission to withdraw should ordinarily only be granted with the concurrence of the Service. *Id.* at 565. The BIA has not defined the term "interest of justice" but has held that a balancing of the equities test is not an appropriate method to determine whether an alien should be permitted to withdraw an application for admission, and that instead "a narrower focus was intended" on the "factors directly relating to the issue of [the alien's] admissibility." *Id.* at 564.

Though Rojas–Castro conceded excludability, she was eligible for a waiver of excludability as the spouse of a United States citizen. *See Ng v. I.N.S.*, 804 F.2d 534, 538 (9th Cir.1986). During the proceedings before the IJ, Rojas–Castro's husband obtained U.S. citizenship and she filed an application to adjust her status and an application for waiver of excludability with the District Director. Even before Rojas–Castro's husband became a U.S. citizen, Rojas–Castro was the beneficiary of an approved I–130 Petition for Alien Relative filed on her behalf by her husband. This visa carried a priority date of November 14, 1991, but Rojas–Castro had not been able to apply for an immigrant visa or adjustment of status due to a backlog in Family 2A visa availability. The District Director, knowing Rojas–Castro had been convicted for attempting to enter the country without proper docu-

---

**3.** Our jurisdiction to review the decision of the BIA is governed by 8 U.S.C. § 1105a (repealed). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") repealed 8 U.S.C. § 1105a and replaced it with a new judicial review provision codified at 8 U.S.C. § 1252. *See* IIRIRA § 306(c)(1), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), as amended by Act of Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat. 3656. However, because the new review provision does not apply to petitioners whose deportation proceedings commenced before April 1, 1997, this court continues to have

jurisdiction pursuant to 8 U.S.C. § 1105a. *See* IIRIRA § 309(c)(1).

**4.** 8 U.S.C. § 1225(a)(4) provides that "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." However, this statute became effective April 1, 1997, after the IJ rendered his decision in these proceedings. The INS issued regulations to implement § 1225(a)(4) which essentially codify the standard announced in *Matter of Gutierrez*, 19 I. & N. Dec. 562, 564–65. 8 C.F.R. § 240.1(d).

mentation, granted her a work authorization permit while her application was under review. The IJ issued his decision in April 1996, though the District Director had interviewed Rojas Castro in conjunction with her applications one month earlier, in March 1996, and her applications were still pending.

■ These are all factors of admissibility which weigh heavily in Rojas–Castro's favor.[5] We note that despite these pending applications and the District Director's actions, the Service repeatedly refused to administratively close the proceedings until the Director could issue a decision. Though the IJ stated that the facts and circumstances did not warrant withdrawal, he failed to articulate how, or even whether, he considered the factors relating to her admissibility.[6] See Yepes–Prado v. I.N.S., 10 F.3d 1363, 1370 (9th Cir.1993) ("In making a discretionary immigration decision, the agency must indicate how it weighed the factors involved and how it arrived at its conclusion."). We conclude the IJ and the BIA abused their discretion by failing to give adequate consideration to the factors directly relating to Rojas–Castro's admissibility. Those factors suggest the interests of justice would best be served by permitting the withdrawal even without the Service's concurrence.

■ Additionally, the IJ failed to articulate whether or not Rojas–Castro met the first part of the application withdrawal criteria, i.e., whether she possessed "both the intent and the means to depart immediately from the United States." Matter of Gutierrez, 19 I. & N. Dec. at 564–65. The IJ declined to take testimony from Rojas–Castro. In his oral order, the IJ suggested Rojas–Castro's pleadings reflected a desire to stay in the country, but acknowledged her counsel stated that she would depart. In fact, counsel stated Rojas–Castro would depart, but suggested she would not need to depart because she had a visa immediately available to her. The IJ did not reach a conclusion.

We therefore remand to the BIA to consider the factors of admissibility, both those articulated here and others that may be present, and to determine whether Rojas–Castro possessed both the intent and means to depart if the withdrawal is granted. The BIA should instruct the IJ to take any additional testimony necessary to adequately determine these questions.

We reject Rojas–Castro's argument that the IJ erred in denying her request for a continuance at the final hearing on April 26, 1996. There is no evidence that Rojas–Castro requested a continuance at that hearing and, consequently, the IJ did not act upon it.

Petition for review is GRANTED and the matter REMANDED.

5. In reviewing the BIA, we do not weigh the equities involved, as the dissent contends, but properly focus on the narrower question of whether the BIA adequately considered the factors directly related to Rojas–Castro's admissibility. See Gutierrez at 564–565 (rejecting focus on equitable considerations such as petitioner's lack of an arrest or welfare record, or the fact that petitioner was supporting his family, in favor of narrower inquiry on factors directly related to issue of admissibility).

6. After articulating the standard, the IJ stated "as the Board has pointed out, once excludability has become apparent, [withdrawal] should only be granted with the concurrence of the Service." The IJ then noted the Service opposed the withdrawal and denied the application. This statement suggests the IJ erroneously adopted a per se rule requiring denial when the Service is opposed to a withdrawal. However, Matter of Gutierrez states that once excludability becomes apparent, withdrawal should "ordinarily" be granted only with the concurrence of the Service. Matter of Gutierrez, 19 I. & N. Dec. at 565. Thus, the IJ is required to evaluate the criteria and make a discretionary determination even when excludability has been determined.

RAWLINSON, Circuit Judge, Dissenting.

I respectfully dissent. Although the majority's disposition acknowledges that this case is governed by the BIA's decision in *Matter of Gutierrez,* 19 I & N Dec. 562, 1988 WL 235445 (1988), the majority's rationale strays far from that ruling. In *Gutierrez,* the BIA expressly cautioned that determination of whether to allow an alien in exclusion proceedings to withdraw her application for admission, should not be made by weighing the equities involved. *Id.* at 564; *See* also *Sharma v. Reno,* 902 F.Supp. 1130, 1139 (N.D.Cal.1995). However, the majority disposition does exactly that by articulating "factors of admissibility which weigh heavily in Rojas–Castro's favor."

The proper focus on appeal is whether Rojas–Castro established that she possessed the intent and means to depart immediately and that her exclusion would not serve the interests of justice. See *Gutierrez,* 19 I. & N. Dec. at 564–65; see also *Sharma,* 902 F.Supp. at 1139. Rojas–Castro made no such showing.

The majority accuses the IJ of declining to take testimony from Rojas–Castro as to her means and intent to depart. In fact, the record reflects that Rojas–Castro never intended to depart the United States. Rojas–Castro's counsel specifically indicated to the court that Rojas–Castro's intent in attempting to withdraw her application was to remain in the United States while she pursued her adjustment of status. (Administrative Record at 80–81, 98). Therefore, the rejected testimony was not as to Rojas–Castro's intent to depart, but an attempt to explain the circumstances under which she was discovered attempting to reenter the United States without proper entry documents (Administrative

Record at 107, 109). The proffered testimony was already a matter of record, having been explored thoroughly at Rojas–Castro's criminal trial, where she was convicted of illegal entry (Administrative Record at 37, 77–78, 107).

We must keep in mind the BIA's caution "that it was never contemplated that the withdrawal of an application for admission would become a nonstatutory form of 'relief' from excludability which an applicant could apply for after excludability became apparent." *Gutierrez,* 19 I. & N. Dec. at 565. With that stricture in mind and in light of Rojas–Castro's evidentiary failing, I find no abuse of discretion on the part of the IBA. *See Sharma,* 902 F.Supp. at 1140 (applying an abuse of discretion standard).